# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **INGRAM BARGE COMPANY LLC** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) NO. _____ |
| | ) |
| **MICHIGAN SALT PRODUCTS, LLC** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Ingram Barge Company LLC ("Ingram") files this Complaint against defendant Michigan Salt Products, LLC ("Michigan Salt") and alleges the following:

1.

Ingram is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. At all relevant times Ingram provided marine transportation services to Michigan Salt.

2.

Michigan Salt is, upon information and belief, a Michigan limited liability company with its principal place of business at 1120 S Lapeer Road, Suite 200, Oxford, Michigan.

## JURISDICTION

3.

This Court has subject matter jurisdiction over this admiralty and maritime case involving the transportation of cargo by barge over navigable waters pursuant to 28 U.S.C. § 1333. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in

controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

4.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.

Ingram and Michigan Salt entered into a Transportation Agreement with an effective date of May 1, 2019 (the "Transportation Agreement"). The Transportation Agreement contains a forum selection clause pursuant to which Michigan Salt "irrevocably consents" to jurisdiction in the United States District Court for the Middle District of Tennessee for legal actions arising out of or relating to the Transportation Agreement. The claims asserted herein arise from and relate to the Transportation Agreement, and Michigan Salt is therefore subject to personal jurisdiction and venue in this Court.

**FACTS**

6.

Michigan Salt contacted Ingram in March 2019, to discuss the transportation of bulk rock salt by barge from the New Orleans area to Lemont and/or Chicago, Illinois.

7.

On April 4, 2019, Ingram sent Michigan Salt's president, Andy Lindamood, a copy of Ingram's standard terms and conditions. Michigan Salt did not question or seek to negotiate the terms and conditions contained therein.

-2-

Case 3:21-cv-00674   Document 1   Filed 08/30/21   Page 2 of 14 PageID #: 2

8.

Ingram and Michigan Salt subsequently negotiated rates, charges, and other commercial aspects pertaining to the transport of the salt. On April 22, 2019, Andy Lindamood, as president of Michigan Salt, requested that Ingram transmit a copy of the negotiated transportation contract for his review.

9.

On May 3, 2019, Ingram transmitted the Transportation Agreement (identified by Ingram as Carrier's Agreement No. 109339/27309) to Andy Lindamood *via* email.

10.

Andy Lindamood executed the Transportation Agreement in his capacity as president of Michigan Salt.

11.

On May 16, 2019, Michigan Salt sent a fully executed copy of the Transportation Agreement to Ingram *via* email. Michigan Salt's email is attached hereto as **Exhibit 1** and the fully executed Transportation Agreement is attached hereto as **Exhibit 2.** The terms and conditions of the Transportation Agreement are incorporated herein *in extenso*.

12.

The parties had further negotiations regarding stevedoring services and charges for the loading of the barges with rock salt in Louisiana. On June 6, 2019, Ingram sent Lindamood an amendment to the Transportation Agreement, No. 109339/27309, entitled "Amendment 1" and dated June 6, 2019 (the "Amendment"). The Amendment is attached hereto as **Exhibit 3.** The Amendment did not change existing terms of the Transportation Agreement, but solely added terms and conditions for stevedoring services Ingram would provide.

13.

The Transportation Agreement included services for the transportation of rock salt by barge over navigable waters. The Transportation Agreement is therefore a maritime contract.

14.

The Transportation Agreement designated Ingram as the "Carrier" and Michigan Salt as the "Shipper."

15.

Parts I and II of the Transportation Agreement govern the transportation of Michigan Salt's dry cargo (rock salt) by barge.

16.

Part I, Section 9 of the Transportation Agreement provides the Free Time for the barges: "Six (6) days all purpose freetime – Sundays and Holidays included." **Exhibit 2.**

17.

Part I, Section 10 of the Transportation Agreement provides the Demurrage Rates for the barge: "$300.00 per barge per day for the first 5 days; $400.00 per barge per day for the next 5 days then $550.00 per barge per day thereafter." **Exhibit 2.**

18.

Part II, Section 29 of the Transportation Agreement provides in pertinent part relating to demurrage and free time:

> **Demurrage and Free Time**: The free time to be allowed is to be that which is specified in Part I. No free time will be allowed on empty barges placed upon Shipper's request for placement if, subsequent to placement, such order is cancelled.
>
> After the period of free time has expired, the demurrage charges specified under this Agreement will accrue for each day including Saturdays, Sundays, and National Holidays, until the barge is released to Carrier. All such charges will be invoiced and paid in accordance with the terms set forth herein.

Unless otherwise specifically provided in Part I, time will be computed for the total period barge is in Shipper's possession for loading or for unloading and will begin as of the first 7:00 a.m. after barge is actually or constructively placed for loading or for unloading and will run until Carrier has been notified in writing that barge has completed loading or unloading and is available for pick up. The written release must be received by Carrier by 11:00 a.m. (Nashville time) or the barge will not be considered as having been released by 7:00 a.m. In computing time, days will consist of 24 hours running from 7:00 a.m. until the next 7:00 a.m. A fraction of a day will be considered as one day. Notwithstanding the foregoing, in the event a barge is placed after 7:00 a.m. and released prior to 7:00 a.m. the immediately following day, one (1) free day will be used.

When Carrier, for its convenience, places a barge for loading prior to date specified by Shipper, time will run from the first 7:00 a.m. of the date specified by Shipper or from 7:00 a.m. of the date when actual loading began, whichever occurs sooner.

19.

Part II, Section 53 of the Transportation Agreement provides in pertinent part relating to lock delays:

With respect to lock delays encountered by any barge(s) laden with Shipper's Cargo at any lock and dam structure, Carrier will automatically apply a lock delay charge for each affected barge equal to the then-current 'Lock Surcharge Rates' posted by Carrier on its website found at www.ingrambarge.com/resc.php under the 'Documents' section. Such posted rates may be revised periodically by Carrier in its sole discretion. Each affected barge will receive 12 hours of free lock time for each lock and dam structure during the trip. Following the expiration of the 12 hours of free lock time at any lock and dam structure, the lock delay charge will begin to accrue for each affected barge and will be deemed earned by Carrier. The accrual of the lock delay charges will cease when the tow containing Shipper's barge departs the lock chamber. Free lock time (i) begins when the barge arrives in the vicinity of the lock and dam structure and the vessel master has notified the lock master that the vessel is ready to lock through (ii) is separate and distinct from other free time allowed in this Agreement, and (iii) unused free lock time at any lock and dam structure does not aggregate or carry-over to another lock and dam structure or to another voyage. Subject to the "Payment of Freight" section above, Carrier will invoice Shipper for such lock delay charge(s) following the barge's arrival at destination.

20.

The lock surcharge rates referred to in Section 53 of the Transportation Agreement (the "Lock Surcharge Rates") were at all pertinent times available for review on Ingram's website as set forth in Section 53 and were accessible by navigating to www.ingrambarge.com/resc.php and

reviewing the files in the "Documents" section. The 2019 Lock Surcharge Rates, which were applicable to the voyages under the Transportation Agreement, are attached hereto as **Exhibit 4.**

21.

The Lock Surcharge rates were easily accessible and available to Michigan Salt for review. Michigan Salt had notice of the amounts it would be charged for lock delays encountered by Ingram's barges while transporting Michigan Salt's cargo.

22.

Section 54 F of the Transportation Agreement states "Whether or not Shipper [Michigan Salt] executes this Agreement in the acceptance space hereon, loading of a barge shall constitute an acceptance of all terms and conditions of the Agreement." After its receipt of the Transportation Agreement, Michigan Salt caused Ingram's barges to be loaded with Michigan Salt's cargo, *i.e.,* rock salt.

23.

Section 27 of the Transportation Agreement provides that interest at the rate of two percent (2%) per month (or any fraction thereof) shall accrue on any past due payment obligations arising under the Transportation Agreement. Section 27 also provides that Ingram is entitled to reasonable attorneys' and collection agency fees incurred in collecting delinquent payments.

24.

Starting with barge IN155410, a total of 42 Ingram barges were loaded with rock salt pursuant to the Transportation Agreement at mile 136.0 on the Lower Mississippi River between June 6 and 14, 2019.

25.

The barges encountered several delays in loading at mile 136 of the Lower Mississippi River beyond the allowable free time in the contract. Pursuant to the Transportation Agreement, each barge had six days of free time. Any loading time beyond the six days of free time was charged at the demurrage rate set out in Part I of the Transportation Agreement pursuant to the terms of Part II, Section 29. Ingram issued 18 invoices to Michigan Salt relating to the demurrage charges. The invoices for the demurrage charges are set forth in the following table:

| Invoice # | Invoice Date | Due Date | Invoice Amount | Credit Amount | Balance | Exhibit No. |
|---|---|---|---|---|---|---|
| 1959436 | 07/09/2019 | 08/08/2019 | $1,900.00 | | $1,900.00 | Exhibit 5 |
| 1960306 | 07/17/2019 | 08/16/2019 | $2,200.00 | ($1,900.00) | $300.00 | Exhibit 6 |
| 1960765 | 07/22/2019 | 08/21/2019 | $4,700.00 | ($2,300.00) | $2,400.00 | Exhibit 7 |
| 1961829 | 07/30/2019 | 08/29/2019 | $7,350.00 | ($3,450.00) | $3,900.00 | Exhibit 8 |
| 1963974 | 08/13/2019 | 09/12/2019 | $1,900.00 | | $1,900.00 | Exhibit 9 |
| 1964290 | 08/15/2019 | 09/14/2019 | $3,800.00 | | $3,800.00 | Exhibit 10 |
| 1964498 | 08/16/2019 | 09/15/2019 | $900.00 | | $900.00 | Exhibit 11 |
| 1964705 | 08/19/2019 | 09/18/2019 | $7,800.00 | ($2,300.00) | $5,500.00 | Exhibit 12 |
| 1965374 | 08/23/2019 | 09/22/2019 | $14,900.00 | ($3,700.00) | $11,200.00 | Exhibit 13 |
| 1965881 | 08/28/2019 | 09/27/2019 | $14,450.00 | ($6,600.00) | $7,850.00 | Exhibit 14 |
| 1966060 | 08/29/2019 | 09/28/2019 | $5,700.00 | | $5,700.00 | Exhibit 15 |
| 1966361 | 09/03/2019 | 10/03/2019 | $1,200.00 | | $1,200.00 | Exhibit 16 |
| 1970185 | 09/30/2019 | 10/30/2019 | $11,200.00 | ($4,400.00) | $6,800.00 | Exhibit 17 |
| 1970943 | 10/03/2019 | 11/02/2019 | $26,800.00 | ($9,900.00) | $16,900.00 | Exhibit 18 |
| 1971129 | 10/04/2019 | 11/03/2019 | $9,550.00 | | $9,550.00 | Exhibit 19 |
| 1971362 | 10/07/2019 | 11/06/2019 | $18,350.00 | | $18,350.00 | Exhibit 20 |
| 88008813 | 05/29/2020 | 06/28/2020 | $3,150.00 | | $3,150.00 | Exhibit 21 |
| 88008184 | 05/29/2020 | 06/28/2020 | $2,750.00 | | $2,750.00 | Exhibit 22 |
| Totals | | | $138,600.00 | ($34,550.00) | $104,050.00 | |

(the foregoing invoices are referred to collectively as the "Demurrage Invoices").

26.

Ingram provided a total credit to Michigan Salt on the Demurrage Invoices in the amount of $34,550.00. Michigan Salt owes the remaining $104,050.00 to Ingram but to date has not paid the Demurrage Invoices.

27.

The barges laden with Michigan Salt's cargo encountered several delays at various locks as they were towed from the Lower Mississippi River to their destination in either Lemont, IL or Chicago, IL. Pursuant to the Transportation Agreement, Michigan Salt was allowed twelve (12) hours of free time at each lock, after which each additional hour was charged at the Lock Surcharge Rates set forth in the Transportation Agreement and detailed on Ingram's website. Ingram issued Michigan Salt forty-one (41) invoices for the lock delays encountered by the barges loaded with Michigan Salt's cargo. All barges for which Ingram invoiced Lock Surcharge Rates to Michigan Salt are identified in the following table by barge number, load date, discharge date, lock, invoice number, amount invoiced, due date and exhibit number:

| Barge Name | Load Date | Discharge Date | Lock | Invoice No. for Lock Delay | Total Amount Invoiced for Lock Delays | Due Date | Exhibit |
|---|---|---|---|---|---|---|---|
| IN155410 | 6/6/2019 | 6/27/2019 | Marseilles | 1959591 | $38.40 | 8/9/2019 | Exhibit 23 |
| T13871 | 6/12/2019 | 7/14/2019 | Starved Rock and Marseilles | 1960516 | $2,074.50 | 8/17/2019 | Exhibit 24 |
| IN135416 | 6/7/2019 | 7/11/2019 | Marseilles | 1960517 | $1,793.10 | 8/17/2019 | Exhibit 25 |
| IN164481 | 6/10/2019 | 7/12/2019 | Starved Rock and Marseilles | 1960518 | $2,074.50 | 8/17/2019 | Exhibit 26 |
| IN164486 | 6/10/2019 | 7/11/2019 | Marseilles | 1960519 | $1,793.10 | 8/17/2019 | Exhibit 27 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IN164489 | 6/11/2019 | 7/12/2019 | Starved Rock and Marseilles | 1960520 | $2,074.50 | 8/17/2019 | Exhibit 28 |
| IN176023 | 6/10/2019 | 7/11/2019 | Marseilles | 1960521 | $1,793.10 | 8/17/2019 | Exhibit 29 |
| IN085028 | 6/9/2019 | 7/14/2019 | Starved Rock and Marseilles | 1961207 | $2,074.50 | 8/24/2019 | Exhibit 30 |
| T13890 | 6/10/2019 | 7/14/2019 | Starved Rock and Marseilles | 1961208 | $2,074.50 | 8/24/2019 | Exhibit 31 |
| IN164455 | 6/11/2019 | 7/12/2019 | Starved Rock and Marseilles | 1961209 | $2,074.50 | 8/24/2019 | Exhibit 32 |
| IN176138 | 6/12/2019 | 7/12/2019 | Starved Rock and Marseilles | 1961210 | $2,074.50 | 8/24/2019 | Exhibit 33 |
| IN115511 | 6/12/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961830 | $3,134.41 | 8/29/2020 | Exhibit 34 |
| IN176107 | 6/13/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961831 | $3,134.41 | 8/29/2019 | Exhibit 35 |
| IN176145 | 6/13/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961832 | $3,134.41 | 8/29/2019 | Exhibit 36 |
| IN176146 | 6/10/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961833 | $3,134.41 | 8/29/2019 | Exhibit 37 |
| ING5848 | 6/12/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961834 | $3,134.41 | 8/29/2019 | Exhibit 38 |
| ING7931 | 6/6/2019 | 7/22/2019 | Starved Rock and Marseilles | 1961835 | $3,134.41 | 8/29/2019 | Exhibit 39 |
| IN095046 | 6/7/2019 | 7/25/2019 | Starved Rock and Marseilles | 1961836 | $3,134.41 | 8/29/2019 | Exhibit 40 |
| ING7537 | 6/9/2019 | 8/6/2019 | Starved Rock and Marseilles | 1963510 | $5,486.70 | 9/8/2019 | Exhibit 41 |
| IN095034 | 6/6/2019 | 8/6/2019 | Starved Rock and Marseilles | 1963975 | $5,486.70 | 9/12/2019 | Exhibit 42 |
| IN164445 | 6/10/2019 | 8/6/2019 | Starved Rock and Marseilles | 1963976 | $4,123.51 | 9/12/2019 | Exhibit 43 |
| ING4734 | 6/14/2019 | 8/6/2019 | Starved Rock and Marseilles | 1963977 | $4,123.51 | 9/12/2019 | Exhibit 44 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IN126446 | 6/14/2019 | 8/6/2019 | Starved Rock and Marseilles | 1964139 | $4,123.51 | 9/13/2019 | Exhibit 45 |
| IN085087 | 6/7/2019 | 8/12/2019 | Starved Rock and Marseilles | 1965030 | $5,583.60 | 9/20/2019 | Exhibit 46 |
| IN085405 | 6/8/2019 | 8/5/2019 | Starved Rock and Marseilles | 1965031 | $4,123.51 | 9/20/2019 | Exhibit 47 |
| IN176048 | 6/13/2019 | 8/5/2019 | Starved Rock and Marseilles | 1965032 | $4,123.51 | 9/20/2019 | Exhibit 48 |
| IN936402 | 6/11/2019 | 8/9/2019 | Starved Rock and Marseilles | 1965033 | $4,123.51 | 9/20/2019 | Exhibit 49 |
| ING7700 | 6/8/2019 | 8/9/2019 | Starved Rock and Marseilles | 1965034 | $4,123.51 | 9/20/2019 | Exhibit 50 |
| T13716 | 6/10/2019 | 8/6/2019 | Starved Rock and Marseilles | 1965035 | $4,123.51 | 9/20/2019 | Exhibit 51 |
| IN165438 | 6/8/2019 | 8/5/2019 | Starved Rock and Marseilles | 1965265 | $4,123.51 | 9/22/2019 | Exhibit 52 |
| ING4779 | 6/14/2019 | 8/12/2019 | Starved Rock and Marseilles | 1965266 | $5,583.60 | 9/22/2019 | Exhibit 53 |
| IN135476 | 6/7/2019 | 8/9/2019 | Starved Rock and Marseilles | 1966061 | $5,583.60 | 9/28/2019 | Exhibit 54 |
| ING5862 | 6/8/2019 | 8/9/2019 | Starved Rock and Marseilles | 1966062 | $5,583.60 | 9/28/2019 | Exhibit 55 |
| ING7631 | 6/8/2019 | 8/12/2019 | Starved Rock and Marseilles | 1966063 | $5,583.60 | 9/28/2019 | Exhibit 56 |
| T13992 | 6/13/2019 | 8/23/2019 | Starved Rock and Marseilles | 1966948 | $3,902.40 | 10/6/2019 | Exhibit 57 |
| ING4821 | 6/12/2019 | 9/8/2019 | Starved Rock and Marseilles | 1970186 | $5,512.20 | 10/30/2019 | Exhibit 58 |
| IN075177 | 6/8/2019 | 9/8/2019 | Starved Rock and Marseilles | 1971694 | $3,525 | 11/8/2019 | Exhibit 59 |
| IN075183 | 6/6/2019 | 9/27/2019 | Starved Rock and Marseilles | 1971695 | $4,683.30 | 11/8/2019 | Exhibit 60 |

| IN085153 | 6/7/2019 | 9/10/2019 | Starved Rock and Marseilles | 1971696 | $5,512.20 | 11/8/2019 | Exhibit 61 |
|---|---|---|---|---|---|---|---|
| T13881 | 6/11/2019 | 8/24/2019 | Starved Rock and Marseilles | 1971697 | $3,902.40 | 11/8/2019 | Exhibit 62 |
| T13905 | 6/13/2019 | 9/10/2019 | Starved Rock and Marseilles | 1971698 | $5,512.20 | 11/8/2019 | Exhibit 63 |
| Total Owed: | | | | | $150,432.76 | | |

(the foregoing invoices are referred to collectively as the "Lock Delay Invoices").

28.

All of the barges laden with Michigan Salt's cargo arrived at their destination and the salt was unloaded.

29.

Ingram issued invoices totaling $2,518,003.45 to Michigan Salt for affreightment charges, demurrage charges and lock delay charges pursuant to the Transportation Agreement (the "Invoices").

30.

Michigan Salt protested certain demurrage charges included in the Invoices, following which Ingram issued a credit memo to Michigan Salt for some of those charges in the amount of $34,550.00.

31.

Michigan Salt paid Ingram $2,266,049.87 pursuant to the Transportation Agreement.

32.

However, despite making payments to Ingram for certain invoices pursuant to the Transportation Agreement, Michigan Salt refused to pay the Lock Delay Invoices and the Demurrage Invoices totaling $254,482.76.

33.

For more than a year, Ingram has attempted to amicably resolve the dispute over payment of the Lock Delay Invoices and the Demurrage Invoices. However, Michigan Salt has failed and refused to pay the Lock Delay Invoices and the Demurrage Invoices. In support of its failure and refusal to pay the Lock Delay Invoices and Demurrage Invoices, Michigan Salt argued that it did not sign or otherwise accept the Transportation Agreement. Michigan Salt's argument is meritless because Michigan Salt expressly accepted the terms and conditions of the Transportation Agreement by execution and also by performance, a separate means of acceptance specifically authorized by the Transportation Agreement.

**BREACH OF CONTRACT**

34.

Ingram repeats, re-alleges, and incorporates as if fully set forth herein Paragraphs 1-33 above.

35.

A contract is formed when one party makes an offer and the other party accepts the offer. Under the general maritime law, an offer can be accepted by several methods, including by performance, actions or inactions. Indeed, the Transportation Agreement specifically states that loading of a barge constitutes acceptance of the terms and conditions of the Transportation Agreement "[w]hether or not Shipper [Michigan Salt] executes this Agreement". *See* **Exhibit 2**, Sec. 54 F.

36.

Michigan Salt accepted the Transportation Agreement as evidenced by its May 16, 2019, email with its attachment of a signed copy of the Transportation Agreement. *See* **Exhibits 1 and**

**2**. Michigan Salt also accepted the Transportation Agreement by loading cargo in Barge IN155410 on June 6, 2019.

37.

Michigan Salt's acceptance of the Transportation Agreement is further confirmed by its actions, including but not limited to its acceptance of the cargo at the discharge ports, payment of the freight charges, and payment of certain other invoices issued pursuant to the Transportation Agreement.

38.

Having (i) signed the contract, (ii) allowed its cargo to be loaded into Ingram's barges, (iii) accepted delivery of the cargo at the discharge ports, and (iv) paid the freight and certain other invoices, Michigan Salt cannot now disavow the terms of the Transportation Agreement and claim the Lock Delay Invoices and Demurrage Invoices are not owed.

39.

Section 53 of the Agreement explicitly states that Michigan Salt, as the shipper, is responsible for payment of lock delays at the rates set forth on Ingram's website. Ingram invoiced Michigan Salt accordingly. *See* **Exhibit 2**. Michigan Salt was therefore obligated to pay for the lock delay charges as identified in the attached invoices (**Exhibits 23-63**), totaling $150,432.76.

40.

Part I, Section 10 and Part II, Section 29 explicitly state that Michigan Salt, as the shipper, is responsible for payment of demurrage for all time in excess of the allowed free time. *See* **Exhibit 2.** Ingram invoiced Michigan Salt accordingly. Michigan Salt is therefore obligated to pay for the demurrage charges as identified in the attached invoices (**Exhibits 5-22**), totaling $104,050.00.

41.

Michigan Salt's failure to pay the Lock Delay Invoices and Demurrage Invoices totaling $254,482.76 constitutes a breach of the Transportation Agreement. Ingram is therefore entitled, in addition to the $254,482.76 in outstanding Lock Delay Invoices and Demurrage Invoices, to contractual interest and reasonable attorneys' and collection agency fees incurred by Ingram in collecting Michigan Salt's delinquent payments.

**WHEREFORE**, plaintiff, Ingram Barge Company LLC, prays that defendant, Michigan Salt Products, LLC, be served with this Complaint and that, after due proceedings are had, there be judgment in favor of plaintiff and against defendant for all outstanding Lock Delay Invoices and Demurrage Invoices, expenses, damages and losses sustained as a result of the dispute described above and for attorneys' fees, contractual interest, pre-judgment interest and costs as well as all other relief to which Ingram Barge Company LLC may be entitled under law, contract or equity.

Respectfully submitted,

*/s/ W. Brantley Phillips, Jr.*
W. Brantley Phillips, Jr. (018844)
**BASS BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
bphillip@bassberry.com

David L. Reisman (*PHV forthcoming*)
Raymond T. Waid (*PHV forthcoming*)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
(504) 581-7979
dreisman@liskow.com
rwaid@liskow.com

***Attorneys for Ingram Barge Company LLC***