**Anna Jackson**

| | |
|---|---|
| **From:** | Pirtle, Baylee <Baylee.Pirtle@ingrambarge.com> |
| **Sent:** | Thursday, June 6, 2019 9:29 AM |
| **To:** | 'michigansalt@gmail.com' |
| **Cc:** | Schroader, Tyree; Kinnard, Thomas |
| **Subject:** | Michigan Salt 109339-27309 - Amendment 1 and Terminal Agreement |
| **Attachments:** | Michigan Salt 109339 - 27309 - Agree Reserve to LemontChicago -Amendment 1 and Terminal Agreement.pdf |

Attached is the amendment incorporating the Terminal Agreement for Stevedoring services. Please sign and return to me.

Thanks,

**Baylee Pirtle**
**Sales Coordinator**
**Ingram Barge Company**
**Phone: 615-298-7625**
**Email: Baylee.Pirtle@ingrambarge.com**



**EXHIBIT 3**



# TRANSPORTATION AGREEMENT

## AMENDMENT 1

| **Carrier's Representative Contact:** | **Shipper:** | |
|---|---|---|
| Thomas Kinnard, Sales Manager | Michigan Salt Products, LLC | ***Billing Address (if different):*** |
| | 1120 S. Lapeer Road, Suite 200 | |
| Telephone:  615-298-7518 | Oxford, MI  48371 | |
| Facsimile:  615-695-3278 | Attn:  Andy Lindamood | |
| E-Mail:  Thomas.kinnard@ingrambarge.com | | |
| | E-Mail:  michigansalt@gmail.com | |
| **Carrier:  Ingram Barge Company** | | |
| **4400 Harding Road,<br> Nashville, TN 37205** | | |
| **Carrier's Agreement:      109339/27309** | **Shipper's Customer No:  21150** | **Shipper's Customer No:** |

This Amendment 1, made as of June 6, 2019 is to the above referenced Transportation Agreement.  Whether or not Shipper executes this Amendment in the acceptance space provided hereon, loading of a barge shall constitute an acceptance of all the terms and conditions of this Amendment.

All Stevedoring services associated with this Transportation Agreement will be performed by Associated Terminals, LLC under the terms and conditions of the attached Transfer Terminal Agreement at the agreed upon rate of $1.75 per metric ton, payable by Shipper to Carrier.

All other rates, terms, and conditions of the above referenced Transportation Agreement remain in effect and unchanged.


**Carrier:    INGRAM BARGE COMPANY**                **Shipper: MICHIGAN SALT PRODUCTS, LLC**

Signature: *Thomas Kinnard*                          Signature: _____

**By:**  _Thomas Kinnard_____                    **By:**  _____

**Title:** _Sales Manager_____                   **Title:** _____

# TRANSFER TERMINAL AGREEMENT

This agreement is made between **Associated Terminals, LLC**, hereinafter referred to as the Transfer Terminal, and **Ingram Barge Company**, hereinafter referred to as the Shipper.

### I. Purpose
The purpose of this agreement is to specify terms and conditions under which the Transfer Terminal will provide a berth for an import vessel of salt in bulk and transfer the salt from a self-trimming, bulk carrier type ocean vessel to covered hopper river barge.

### II. TERM
The term of this agreement commences on May 01, 2019 and expiring July 01, 2019

### III. QUANTITY
This agreement is intended to secure Shipper the transfer of 60,000 metric tons.

### IV. RATES
Shipper agrees to pay Transfer Terminal the following all-inclusive rates (cover handling included) during the term of this agreement:

**Stevedoring (Floating Derrick)**
Direct vessel to barge

        Salt: $1.75 per metric ton

Transfer Terminal will directly salt in bulk from Shippers single deck, bulk carrier type ocean vessel from covered hopper river barge. Transfer Terminal will comply with all governmental regulations including U.S. Coast Guard regulations governing barges in its custody. In the event that Shipper should in any manner be held responsible for Transfer Terminal negligent acts or omissions regarding handling barges mentioned above, then Transfer Terminal agrees to indemnify and save harmless barge carrier and Shipper from all such responsibility and liability of such terminal negligent acts or omissions. Transfer Terminal agrees that it shall exercise reasonable care with respect to all barges while in its custody, care and control. Transfer Terminal further agrees to indemnify and save harmless shipper from any negligent acts, omissions or stevedoring damage done to vessel during the course of the normal stevedoring operation.

Stand-by and/or idle crane time due to delays caused by the ship owner, barge line or other third parties acting for the ship owner or barge line will be for Shipper's account at the rate of $ 1,200.00/hour/crane which includes crane labor and equipment and excludes trimming labor. Stand-by or idle crane time will be limited to a maximum of 4 hours during any 12-hour labor shift or period, at which time labor will be dismissed and rescheduled for the start of the next normal labor shift. Normal labor shifts are from

0700 hours to 1900 hours and 1900 hours to 0700 hours.  During this stand-by or idle time, Transfer Terminal's discharge obligation shall be suspended.  For example, this clause would include mechanical problems experienced by the vessel, waiting on barges or removal of damaged cargo, etc.

\*\*Cargo should be dry, free flowing in an acceptable manner to allow grab bucket discharge/loading.

### V.   LOAD GUARANTEE
Transfer Terminal guarantees 12,000 metric tons per WWDSHINC to transfer 60,000 metric tons of salt in bulk from vessel to river barge including Saturdays, Sundays and recognized Holidays, except New Year's Day, Mardi Gras, Easter Day, Independence Day, Thanksgiving Day, and Christmas Day. Demurrage Rate will be presented prior to vessel being accepted by Terminal.  In the event that Transfer Terminal does not transfer cargo at the guaranteed rate, Transfer Terminal will be liable for actual demurrage rate as per charter party.  However, if Transfer Terminal exceeds the guaranteed discharge rate, despatch will be earned by the Transfer Terminal at on-half the demurrage rate.

Time to count begins at the earliest of commencement of discharge or twelve (12) hours after Notice of Readiness is accepted, provided the vessel is in berth or at the nearest anchorage to the berth should the berth be occupied, and the vessel is in all respects ready to discharge cargo with all governmental clearances granted, draft surveys complete and hatches open.  Transfer Terminal will not be responsible for time lost due to cargo availability, cargo quality, Force Majeure or delays caused by Shipper or third party, except if the third party is directly under control of or under contract to Transfer Terminal, in which case Transfer Terminal will be responsible for lost time due to third party.

### VI. BERTH GUARANTEE
Transfer Terminal guarantees to provide a safe berth for the ocean vessels within 12 hours after arrival at one of the Transfer buoys at mile markers 136 - 137 AHP LMR. Arrival of vessel will be defined as in paragraph V, *Load Guarantee*. Steaming time, bunkering time and weather delays do not count in calculating this 12-hour period. Demurrage liability shall apply after the 12-hour period has expired.
Shipper is to provide a tentative vessel-loading schedule to the Transfer Terminal a minimum 30 days prior to vessel laycan. Shipper or the designated agent will then provide periodic updates of vessel position, 10, 7, 5, and 3-days prior to arrival of the vessel.  At the 5 day notice a firm ETA will be established.  Should a vessel arrive prior to or 2 days after this ETA or if full cargo stem as listed for the proposed bill of lading is not available for loading, Transfer Terminal will not be responsible for demurrage until the vessel is secure in loading berth.

## VII. Notice of Readiness

Notice of Readiness to discharge shall be tendered by the vessel and accepted by Transfer Terminal after arrival at berth or terminal facility, or the closest available anchorage if terminal berth is occupied or vessel is otherwise ordered to anchorage or discharge buoy by Transfer Terminal, at any time in or out of office hours, provided the vessel is in free pratique and is in all respects ready to discharge.

In case quarantine inspection for pratique is not available other than because of the vessel's default, Notice of Readiness shall be regarded as tendered at the first available opportunity and laytime shall commence twelve (12) hours after Notice of Readiness is regarded as tendered; however, time lost for completion of pratique after berthing shall not count as laytime.

## VIII. Laytime

1. Laytime for loading shall commence twelve (12) hours after Notice of Readiness is accepted by Transfer Terminal regardless of when Notice of Readiness is accepted by Shipper or Agent representing Shipper.
2. In case Transfer Terminal can arrange to load before laytime commences to count, as specified in (a) above, time actually used in loading shall count as laytime.
3. In the event of declaration of Force Majeure by Transfer Terminal, time lost shall not count as laytime.
4. In case laytime interruption (s) caused by Force Majeure item (s) occurs, Transfer Terminal shall declare Force Majeure to the shipper by every available communication method of such laytime interruption (s) so that all such period (s) of laytime interruption (s) shall not count as laytime. It is understood, however, if Transfer Terminal finds that it cannot complete loading a vessel because of a Force Majeure situation then Transfer Terminal and Shipper will immediately confer with a view to finding the best solution to problem.
5. Transfer Terminal will not be responsible for time lost due to cargo availability, cargo quality or delays caused by Shipper or third parties including product sampling, except if the third party is under the control of or under contract to Transfer Terminal, in which case Transfer Terminal will be responsible for lost time due to the third party.
6. Transfer Terminal will not be responsible for time lost due to High River conditions defined as recognized as U.S Army Corps of Engineers "Flood Stages" and/or time lost due to any River Pilot self imposed restricted operating hours due to river conditions.
7. All river barges to receive the cargo must be available in Transfer Terminal designated Fleet.

### IX. Demurrage

If Transfer Terminal fails to meet the specific transfer requirements of this agreement, demurrage shall be paid by Transfer Terminal to the Shipper for all time lost after expiration of allowable laytime at a demurrage rate which will be the lesser of $25,000 USD/WWDSHINC or actual demurrage rate as per ocean vessel charter party. Despatch shall be paid by the Shipper to the Transfer Terminal for all time saved of the allowable laytime period at despatch rate which will be 50% of the demurrage rate as per the ocean vessel charter party or $12,500 whichever is lesser. Upon nomination of a vessel for loading, the nomination must include the demurrage rate of the nominated vessel.

### X. Other Loading Terms

Other loading terms and conditions shall be, on a case-by-case basis, mutually negotiated in good faith. Such subsequent negotiations shall be in writing.

### XI. Cleaning

Transfer Terminal will blade / machine clean holds of vessels, as high as a person can reach while standing on the tank top of the hold at no additional charge.

### XII. Force Majeure

Neither party's performance hereunder is subject to and contingent on conditions beyond its reasonable control including but not restricted to strikes, locks out, work stoppages, labor disputes, political boycotts, official acts of government authority, civil commotion, wars, invasions, fires, explosions, accidents, epidemic or quarantine, sabotage, vandalism, malicious mischief, perils of adverse navigating conditions, catastrophic equipment breakdown, any shortage of material or disruption of power supply. For all purposes of this section, any strike, work stoppage or labor dispute shall automatically be deemed to be beyond a party's reasonable control even if such party is fully capable of settling or otherwise resolving the same.

Neither party shall be under any liability of any kind or nature whatsoever for any loss, damage, delay or failure in performance, including but not limited to, vessel demurrage, damages, deterioration of quality, shrinkage in quantity, and/or loss of product, in the event that it should fail or delay to perform its obligations hereunder where such failure or delay is directly caused by Force Majeure event.

A Force Majeure event shall not excuse a party from performing unless such party shall give written notice to other party promptly upon learning of such Force Majeure. Information as to the included in such notice shall be updated periodically during the continuance of the Force Majeure event. Failure to give such notice and furnish such information promptly shall be deemed a waiver of all rights for such notice and failure to furnish such information promptly shall be deemed a waiver of all rights for such period

of time during which notice was not given. Upon removal of the cause, shipment shall resume at the specified terms.

In the event of a Force Majeure, this agreement, at either party's option, may be terminated or its terms extended by a number of days equal to the number of days during which the force majeure exists, but in no event to exceed sixty (60) days. There shall be no liability for any such suspension.

### XIII. Assignments

No party may assign this agreement or any of its rights or obligations under this agreement to any person or entity other than to a company controlling, controlled by, under common control or affiliated with such party, without prior written consent of the other parties, which consent shall not be unreasonably withheld. Any such assignment notwithstanding, each party shall remain liable for the performance of its respective obligations thereunder.

### XIV. Exclusions
The above rates and terms exclude dockage fees, harbor fees, launch fees, security fees, or any other fees imposed by a governmental or port jurisdiction.

### XV. Payment terms

Shipper shall make payment to the account of Transfer Terminal designated in accordance with the terms set forth below:

Bank: Capital One, N.A.
Acct: 8684200001
ABA Routing No.: 065000090

Transfer Terminal shall invoice Shipper for the amount of money owed by Shipper to Transfer Terminal for services provided by Transfer Terminal under this agreement during such month. Payment shall be due within thirty (30) days after receipt of the correct and proper invoice (the "Due Date"). Any and all payments made hereunder shall be made in United States Dollars by electronic transfer of immediately available funds, or by other mutually agreeable method(s), to the account designated by Transfer Terminal herein or such other account as Transfer Terminal may designate with reasonable advance notice to Shipper from time to time. Any amount not paid when due shall accrue interest (before as well as after judgment) at the rate of two percent over the prime lending rate as published from time to time in the Wall Street Journal (the "Interest Rate"), to the extend permitted by law, such interest shall be calculated from and including the Due Date to but excluding the date the delinquent amount is paid in full.

If Shipper, acting reasonably and in good faith, disputes an invoice, it shall provide a written explanation specifying in detail the basis for the dispute and pay any undisputed portion no later than the Due Date. If any amount disputed by Shipper is subsequently

determined to be due, it shall be paid within five (5) days along with interest accrued at the Interest Rate from the original Due Date through the date paid.

\*\*\*Placement of business constitutes acceptance of terms and conditions herewithin\*\*\*

Ingram Barge Company  
By: _____  
Title: _____

Associated Terminals, LLC  
By:  
Title: